## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**JUDY M. JONES,**

      **Plaintiff,**

**vs.**                                                  **Case No. 4:15cv295-CAS**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

_____/


## MEMORANDUM OPINION AND ORDER

This is a Social Security case referred to the undersigned upon consent of the parties and reference by District Judge Mark E. Walker. ECF No. 10.   The Court concludes that the decision of the Commissioner should be affirmed.

## I.   Procedural History

On June 30, 1998, Administrative Law Judge (ALJ) Hanford O'Hara determined that Plaintiff was disabled as of March 2, 1995, and entitled to a period of disability and Disability Insurance Benefits (DIB) (Title II) and Supplemental Security Income (SSI) (Title XVI).   Tr. 17, 30-40.   (Citations

to the transcript/administrative record, ECF No. 17, shall be by the symbol "Tr." followed by a page number that appears in the upper right corner. Citations to the supplemental transcript/administrative record, ECF No. 31, shall be by the symbol "STr." followed by a page number that appears in the upper right corner.)

On April 14, 2006, it was determined that Plaintiff was no longer disabled as of March 1, 2006.   Tr. 50-52.   Plaintiff requested reconsideration.   Tr. 17, 53.   Reconsideration was denied on November 30, 2006.   Tr. 25-57.   Plaintiff requested a hearing before an ALJ. Tr. 66.

On June 18, 2007, ALJ Carol G. Moore held a hearing and issued a decision on November 30, 2007, finding that Plaintiff was no longer disabled as of March 1, 2006.   Tr. 14-29.   On April 24, 2008, the Appeals Council denied Plaintiff's request for review and Plaintiff filed an action in the United States District Court for the Middle District of Georgia.   Tr. 7-9. On February 19, 2010, the District Court granted the Commissioner's motion for entry of judgment and to remand Plaintiff's case to the Commissioner for further proceedings.   Tr. 469-72.

On June 4, 2010, the Appeals Council vacated the ALJ's decision and remanded Plaintiff's case to an ALJ.   Tr. 473-78.   The Appeals Council noted that the ALJ had "focused only on the current evidence and testimony in determining that the claimant was no longer disabled.   The [ALJ] did not evaluate the original medical evidence which served as the basis for the 1998 disability decision, nor did she compare the original evidence to the new evidence."   The Appeals Council also noted that the ALJ found that the claimant suffered from new impairments, but did not explain why, despite these new impairments, the claimant experienced medical improvement, but rather stated that the medical evidence supported a finding that as of March 1, 2006, there had been a decrease in medical severity of the impairments.   Tr. 476.   The Appeals Council determined that the ALJ's "decision [did] not substantiate this determination, nor show a comparison and contrast between the original and current evidence of record."   *Id.*

After conducting a video hearing on February 15, 2011, Tr. 936-72, ALJ Moore issued a decision on July 22, 2011, finding that Plaintiff was no longer disabled as of March 1, 2006, and had not become disabled after

that date.   Tr. 482-99.   On August 24, 2011, Plaintiff filed exceptions.[1]   Tr.
503.   On July 19, 2012, the Appeals Council, however, vacated the ALJ's
decision and remanded Plaintiff's case to an ALJ with detailed instructions.
Tr. 503-05.

On remand, ALJ Cam Oetter, a different ALJ, was assigned Plaintiff's
case.   Tr. 443.   In his decision rendered on August 13, 2013, ALJ Oeter
provided a brief procedural history of the case before him, including noting
Plaintiff's claim for benefits for a period of disability and DIB and SSI.
Tr. 443-44.   Plaintiff appeared and testified at a hearing held on February
19, 2013, in Albany, Georgia.   Tr. 443, 973-1003 (transcript).   Roger S.
Decker, an impartial vocational expert, also testified, Tr. 980-86.   Tr. 521-
24 (Resume).   (Dr. Stephen E. Cosgrove, an impartial vocational expert,
testified on February 15, 2011, before ALJ Moore.   Tr. 443, 936, 938, 961-
68.)   Plaintiff was accompanied to the hearing by Roda Bready who
observed and took notes, but did not testify.   Tr. 464, 975.   Plaintiff was
informed of her right to representation, but chose to appear and testify

---

[1]   On July 27, 2011, Plaintiff wrote to the Appeals Council requesting reversal of
ALJ Moore's July 22, 2011, decision.   Tr. 605-13.

without the assistance of an attorney or other representative.   Tr. 443, 525;

*see* Tr. 976, 1001-02.

A supplemental hearing was scheduled for August 22, 2013, but not

held for the reasons stated below by the ALJ when he discussed the

parameters of the proceeding.[2]   Tr. 443.

> In its remand order, the Appeals Council directed resolution of the
> following issues: provide an adequate basis for the finding of medical
> improvement that caused cessation of the claimant's disability;
> explain the finding that the claimant could return to past relevant
> work; provide the claimant with an opportunity to review the file; and
> create a current exhibit list, as one was not contained in the file when
> it was sent to the Appeals Council (Exhibit B9A) [Tr. 500-05].
>
> The Appeals Council also ordered further evaluation of the medical
> improvement issue by obtaining evidence from a medical expert(s) to
> clarify the nature and severity of the claimant's impairments
> throughout the relevant period.   On remand, the ALJ was instructed
> that if there was a finding of disability cessation, to provide further
> evaluation of the claimant's past work, including whether any of it
> qualified as past relevant work; and, if warranted by the expanded
> record, obtain supplemental evidence from a vocational expert to
> clarify the effects of the assessed limitations on the claimant's
> occupational base, and to determine if the claimant's recent college
> education provided for direct entry into skilled work (Exhibit B9A).
>
> As indicated in the prior decision, the state agency found the claimant
> no longer disabled as of March 1, 2006.
>
> Medical expert evidence was obtained (Exhibits B33F-B35F)

---

[2]   On April 10, 2013, Plaintiff was advised that no exhibits were added after the
last hearing on February 19, 2013.   Tr. 635.   On June 21, 2013, Plaintiff was provided
with a CD containing a recording of her hearing.   Tr. 641.

[Tr. 924-35].

I note here that at the hearing, the claimant expressed a desire to pose questions to the medical experts whose opinions are found in Exhibits B35F to B33F.[3]   Because a written list of questions she submitted is not entirely in appropriate format for presentation to the doctors, a supplemental hearing was scheduled for August 22, 2013, so that the claimant could pose her questions; however, on May 15, 2013, the claimant wrote a letter expressing a desire not to have another hearing, and she requested a decision be made on the evidence in the record (Exhibit B23B) [Tr. 551-52, 640].   The claimant also asked for a copy of the hearing recording, which was provided to her (Exhibit B23E) [Tr. 641].   In the letter that accompanied her hearing recording, dated June 21, 2013, it was stated the supplemental hearing was canceled per her request (Exhibit B23E).   The claimant has not had any further contact with the Hearing Office.

In proceeding with the decision, I find there is sufficient evidence in the file to support a decision, and have proceeded with granting the claimant's request for that decision on the case record.   Moreover, the file contains copies of the questions that the claimant wanted to ask the medical experts, and I have considered her points carefully in weighing the opinions (Exhibit B17E) [Tr. 618-34].

Tr. 443-44.

---

[3]   On October 23, 2012, Plaintiff requested (of ALJ Oetter) a hearing "concerning the Medical Interrogatory Physical Impairments reports that you sent me corning [sic] my case."   Tr. 617.   Plaintiff proposed several questions to Drs. Murry [Murray] Gilman, Ronald E. Keadrick [Kendrick], Sydney [Garner], and Patel, were attached with Plaintiff's letter.   Tr. 617-34; *see* Tr. 978-80, 987-88.   ALJ Oetter considered the reports from Drs. Kendrick, Garner, and Gilman in his decision.
Tr. 452-55 (Exhibits B33F-B35F); *see infra* at 13-16.

ALJ Oetter issued a decision on August 13, 2013, finding that Plaintiff was no longer disabled as of March 1, 2006, but that Plaintiff had become disabled again as of November 25, 2010.   Tr. 440-68.   Plaintiff was advised by ALJ Oetter that if she disagreed with his decision, she could file an appeal with the Appeals Council within 60 days of the date she received the notice from the ALJ.   Plaintiff was further notified that "[t]he Appeals Council will dismiss a late request unless [Plaintiff] show[ed she] had a good reason for not filing it on time."   Tr. 440.   On November 20, 2013, Plaintiff filed exceptions.   STr. 1004-19.   On September 9, 2014, the Branch Chief for the SSA advised Plaintiff that the Appeals Council had received Plaintiff's exceptions, but that the filing of same appeared untimely.   Tr. 438-39.   On September 16, 2014, Plaintiff explained why she had not filed timely exceptions.   Tr. 436-37.   On April 15, 2015, the Administrative Appeals Judge notified Plaintiff that her reasons for not timely filing exceptions were considered and that her late filing would not be excused.   Tr. 434-35.   As a result, the ALJ's decision is the final decision of the Commissioner after remand by the court.   *Id.*; *see* 20 C.F.R. § 404.981.

On June 8, 2015, Plaintiff, appearing pro se, filed a Complaint requesting judicial review of the Commissioner's final decision.[4]   ECF No. 1.   Both parties filed memoranda of law, ECF Nos. 34 and 39, which have been considered.

## II.   Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.   42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).   "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).   "The Commissioner's factual findings are conclusive if supported by substantial evidence."   Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[5]

---

[4]   The Commissioner does not argue that Plaintiff's Complaint was untimely filed.   ECF No. 39.

[5]   "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."   Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).   "A 'substantial evidence' standard,

A claimant's continued entitlement to disability benefits must be reviewed periodically.   20 C.F.R. § 404.1594(a).[6]   "The Commissioner may terminate the claimant's benefits upon finding that there has been medical improvement in the claimant's impairment or combination of impairments related to the claimant's ability to work and the claimant is now able to engage in substantial gainful activity.   42 U.S.C. § 423(f)(1)." Gombash v. Comm'r, Soc. Sec. Admin., 566 F. App'x 857, 858 (11th Cir. 2014) (unpublished).   The Commissioner conducts a multi-step evaluation process to determine whether disability should be terminated - eight steps for a Title II claim and seven steps for a Title XVI claim.   20 C.F.R. §§ 404.1594(f)(1)-(9), 416.994(b)(5)(i)-(viii); Tr. 444.   Generally, the sequential evaluation process includes the following steps.

---

however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.   A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."   Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"   Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

   [6]   The relevant DIB and SSI regulations are virtually identical.   As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise.   The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, *e.g.*, 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

(1) Whether the claimant is engaging in substantial gainful activity;[7]

(2) If not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;

(3) If impairments do not meet a listing, whether there has been medical improvement;

(4) If there has been improvement, whether the improvement is related to the claimant's ability to do work;

(5) If there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies;

(6) If medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment:

(7) If the claimant has a severe impairment, whether the claimant can perform past relevant work; and

(8) If the claimant cannot perform past relevant work, whether the claimant can perform other work.

20 C.F.R. § 404.1594(f); Tr. 444-45.

Generally, the Commissioner must determine if there has been any medical improvement in the person's impairments and, if so, whether the medical improvement is related the person's ability to work. *Id.*; *see* 20

---

7   Unlike a Title II claim, *see* 20 C.F.R. § 404.1594(f)(1), for the Title XVI claim, substantial gainful activity is not a factor to determine if the claimant's disability continues.   Tr. 444; 20 C.F.R. § 416.994(b)(5).

C.F.R. § 404.1594(c) (discussing Commissioner's determination of medical improvement and its relationship to claimant's abilities to do work). Medical improvement is any decrease in the medical severity of a claimant's impairment that was present at the most recent finding of disability.   20 C.F.R. § 404.1594(b)(1).   "[T]here can be no termination of benefits unless there is substantial evidence of improvement to the point of no disability."   McAulay v. Heckler, 749 F.2d 1500, 1500 (11th Cir. 1985) (per curiam).   "In making such a determination, a 'comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement.'"   *Id.*; *see* Simone v. Comm'r of Soc. Sec. Admin., 465 F. App'x 905, 909 (11th Cir. 2012); (unpublished); Parrish v. Comm'r Soc. Sec. Admin., 334 F. App'x 200, 201 (11th Cir. 2009) (unpublished).

        After such review, ALJ Oetter determined that Plaintiff's benefits properly ended on March 1, 2006, but she became disabled again on November 25, 2010.   Tr. 467-68.

## III.   Findings of the ALJ

The ALJ made several findings:

1.   "The most recent favorable medical decision finding that the claimant was disabled is the decision dated June 30, 1998.   This is known as the 'comparison point decision' or CPD."   Tr. 446.

2.   "At the time of the CPD, the claimant had the following medical determinable impairments: diabetes, multiple joint pain, bilateral carpal tunnel syndrome, status-post trigger finger release, major depression, and chronic pain.   Because of these severe impairments, the prior [ALJ] found that the claimant's residual functional capacity [RFC] 'precluded the performance of a full range of sedentary work.'"   *Id.*

3.   "As of March 1, 2006, the date the claimant's disability ended, the claimant had engaged in two periods of substantial gainful activity. The claimant has not engaged in substantial gainful activity since April 1, 2005."   *Id.*

4.   "The medical evidence establishes that, as of March 1, 2006, the claimant had the following 'severe' medically determinable impairments: diabetes mellitus, osteoarthritis and related disorders, bilateral carpal tunnel syndrome, bilateral ulnar neuropathy at the elbow, 'very mild' sensory polyneuropathy, degenerative disc disease of the lumbar and cervical spines, and hypertension.   Medical evidence also establishes that, as of March 1, 2006, the claimant had the following 'non-severe' medically determinable impairments: mood disorder and anxiety disorder."   Tr. 448.   The ALJ further noted:

> At the CPD, as noted herein, the claimant was found to have the "severe" mental impairment of depression (Exhibit B1A). As discussed below under number six, the claimant had medical improvement of her mental condition between the CPD and March 1, 2006.   After careful review of the record, I find that as of March 1, 2006, these impairments caused no more than a minimal limitation on the ability of the claimant to perform work

activities.   Therefore, these were not severe impairments within the meaning of the statute.

In making this finding, I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These broad functional areas are known as the 'paragraph B' criteria.

The ALJ then determined that Plaintiff had *mild* limitation in activities of daily living, social functioning, and concentration, persistence, or pace, and that Plaintiff experienced *no* episodes of decompensation which have been of extended duration.   Tr. 448-49.

5.   "Since March 1, 2006, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 449.

6.   "Medical improvement occurred as of March 1, 2006."   *Id.* The ALJ discussed, in part, medical evidence after June 30, 1998, the CPD, to March 1, 2006; Plaintiff's claim that in April 2006, "her condition had worsened such that she was again unable to comb her hair" and her March 2007 report of daily activities; and the opinions of three medical sources that post-dated March 1, 2006.   Tr. 449-56.

The ALJ considered a February 2006, psychological evaluation by State agency consultant, **Joe Garmon**, a psychologist.   Tr. 452.

Based on his clinical findings, Dr. Garmon opined that the claimant required no mental health diagnosis (Exhibit B7F). Indeed, Dr. Garmon's findings included a normal mental status examination and admissions by the claimant that she experienced no current feelings of sadness or depression. Based on Dr. Garmon's findings and opinions, a State Agency psychologist, who reviewed the record in early March 2006, concluded the claimant was capable of simple and even

moderately detailed tasks (Exhibit B11F).   In June 2206 [sic], another State Agency psychologist reviewed the record and agreed with the findings (Exhibit B11F).   Moreover, the later opinions provided by medical expert psychologist Sydney Garner [referred to in the next paragraph] are consistent with Dr. Garmon's findings and opinions as well as those of the reviewing State Agency experts (Exhibit B35F).   Thus, I afford great weight to the findings of Dr. Garmon and the reviewing State Agency expert opinions.

Tr. 452-53.

**Sydney Garner, Ph.D.,** a psychologist and impartial medical expert completed a Medical Interrogatory Mental Impairment(s)-Adult assessment on October 26, 2012, considering the period of June 1, 1998, to March 1, 2006, Tr. 931-35 (Exhibit B35F).   After considering "the oldest opinion" of Dr. David A. Williams, a psychologist, Tr. 454, the ALJ considered Dr. Garner's opinion again:

> Moreover, there is a new opinion in the record, based on the entire case file, which also found that the claimant had experienced medical improvement related to her mental impairment such that she no longer had a severe mental impairment (Exhibit B35F).   Pursuant to the Appeals Council remand, psychologist Sydney Garner, an impartial medical expert, completed a Medical Interrogatory on October 26, 2012, considering the period of June 1, 1998 to March 1, 2006 (Exhibit B35F).

> Dr. Garner agreed that the evidence provided showed that major depression was established as a medically determinable impairment.   Dr. Garner opined that the claimant had no limitation in activities of daily living and no episodes of decompensation;  she opined only "mild" limitations in social functioning and concentration persistence, and pace, which unequivocally indicates improvement f r o m  the findings of the CPD (Exhibit B1A). Dr. Garner based her opinions on the fact that the records,

as discussed above herein illustrate, the claimant never required mental health treatment from 1998 to 2006, and she did not need medications.   The records reflect that the claimant's complaints centered predominantly on somatic complaints.   Dr. Garner noted that the claimant was not significantly impaired at the 2006 consultative examination with Dr. Garmon.   Dr. Garner also cited many of the activities of daily living discussed above herein, including the fact that the claimant attended church, lived alone, managed finances, bathed, cooked, cleaned, shopped, and had no serious deficits in "attentional abilities" with no evidence of decompensation (Exhibit B35F, page 2).   Finally, Dr. Garmon opined that due to the claimant's chronic pain, she would have functioned best in simple unskilled work that would have provided lower stress (Exhibit B35F, page 5).

Tr. 454-55.

> **Ronald E. Kendrick**, **M.D.**, completed a Medical Interrogatory Physical Impairment(s)-Adults assessment on October 15, 2012, considering the period from June 1, 1998, to March 1, 2006, Tr. 928-30 (Exhibit B34F).

> **Murray Gilman, M.D.**, completed a Medical Interrogatory Physical Impairment(s)-Adults assessment on October 15, 2012, Tr. 925-27 (Exhibit B33F).

The ALJ considered the opinions of Drs. Kendrick and Gilman:

> As to the claimant's physical condition, there [sic] record contains two new opinions, based on the case file, which also found that the claimant experienced medical improvement related to her physical impairments, such that she could sustain less than light work (Exhibits B33F and B34F).

First, Dr. Ronald E. Kendrick completed a Medical Interrogatory on October 15, 2012, considering the period from June 1, 1998 to March 1, 2006 (Exhibit B34F). Dr. Kendrick identified the following severe impairments: cervical spondylosis, lumbar spine degenerative disc disease, bilateral carpal tunnel syndrome, status-post arthroscopy of the right shoulder with acromioplasty, and diabetes mellitus.    Based on the medical record, Dr. Kendrick opined that during the relevant period, the claimant would have been capable of lifting 20 pounds occasionally and 10 pounds or less, frequently.   He further opined standing/walking for thirty minutes at one time for four hours; sitting one hour at a time for six hours; occasional stooping, kneeling, and crawling but no ladders.   Finally, Dr. Kendrick opined frequent use of the upper extremities except for overhead reaching on the right was limited to occasionally (Exhibit B34F, page 3). Similar opinions were made by Dr. Murray Gilman, who also cited the findings of a later 2011 physical consultative examination, which is contained in the file and is supportive of a finding of medical improvement with a continued ability to perform less than light work (Exhibit B33F).

I have given great weight to these opinions to the extent they represent improvement of the claimant's medical condition from a less than sedentary ability to a less then [sic] light ability.   I have given great weight to the opinions of Drs. Kendrick and Gilman, as they are consistent with the longitudinal medical evidence as well as the claimant's admitted activities of daily living, including her ability to attend college, work, and provide care for herself, her mother, and her grandchildren.

Tr. 455.

7.   "As of March 1, 2006, the impairments present at the time of the CPD had decreased in medical severity to the point where the claimant had the [RFC] to perform light work with exceptions.   The claimant could perform four hours of standing walking for 30 minutes at a time; six hours sitting for one hour at a time; occasional postures of climbing ramps/stairs, balancing, stooping, crouching, crawling, kneeling but no ladders/ropes/scaffolds; frequent reaching with the upper extremities, except overhead reaching is occasional; simple/routine tasks with no high production stress."   The ALJ stated further:

> In making this [RFC] assessment, I did not consider the limiting effects of the impairments that developed after the CPD.
>
> As discussed in detail above herein, the records between 1998 and 2006 are replete with objective physical and mental findings that show improvement in condition.   That same evidence supports the [RFC] adjudged herein.   Similarly, as discussed with specificity below herein, there are new and numerous issues of credibility related to the claimant subjective complaints, which render the claimant's prior and subsequent reports and complaints of little persuasive value.   Finally, the record now contains, pursuant to the Appeal's Council remand order, the opinions of three independent medical experts, [identified above in paragraph 6] clarifying the nature and severity of the claimant's impairments from 1998 to 2006.   These opinions also support the [RFC] as of March 1, 2006 (Exhibits B33F to B35F) [Tr. 924-35].

Tr. 456; *see supra* at 13-16.

8.   "The claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's [RFC]." *Id.*

9.   "Beginning on March 1, 2006, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6) and 416.994(b)(5)(v)).   In addition, the claimant has

developed the following new 'severe' impairments: coronary artery disease (June 2010), peripheral vascular disease (June 2010), right plantar calcaneal spur (June 2009), and obesity."   The ALJ noted that "[s]ince March 1, 2006, the claimant's current impairments have caused more than minimal limitation in the claimant's ability to perform basic work activities."   Tr. 456.   The ALJ considered again the four broad functional areas and determined that Plaintiff had *mild* limitation activities of daily living, social functioning, and concentration, persistence, or pace, and *no* episodes of decompensation which have been of extended duration.   Tr. 457-58.

10.   "Beginning on March 1, 2006, based on the current impairments, the claimant has had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can perform four hours of standing and walking for 30 minutes at a time; six hours sitting for one hour at a time; occasional postures of climbing ramps/stairs, balancing, stooping, crouching, crawling, and kneeling but no ladders/ropes/scaffolds; frequent reaching with the upper extremities, except overhead reaching, is occasional; simple/routine tasks with no high production stress."   Tr. 458.   The ALJ noted that Plaintiff did "not have any new or substantial medical evidence from March 1, 2006 through her date last insured in September 2006."   *Id.* The ALJ then considered relevant medical evidence from September 2006 through in and around June 2012, "all testimony rendered by" Plaintiff, her daily activities, and made several adverse credibility findings.   Tr. 459-65.   The ALJ concluded:

> As for the opinion evidence not already discussed herein, I afford great weight to the opinions of the reviewing State Agency Physician, the reviewing State Agency Psychologists, and the examining medical and psychological consultants as their findings/opinions are consistent with the record, as a whole.   Additionally, while I afford significant weigh [sic] to the findings/opinions of the claimant's treating medical/mental health professionals, I afford little weight to the opinions expressed by the claimant's treating mental health professionals in Exhibits identified as Exhibit 7F, pages 8 to 9; Exhibit B17F; and Exhibit AC3.   As discussed herein, these

opinions are inconsistent with the record, as a whole, as well as with their own treatment notes.   Finally, as discussed herein, I afford less weight to the claimant's testimony and her reports, as they are not only inconsistent, but also contradictory.

In sum, the above [RFC] is supported by the comprehensive objective evidence of the record, with full consideration of the claimant's subjective complaints and all medical opinions in the record.

Tr. 465.

11.   "Prior to March 1, 2010, the claimant had past relevant work as a: Data Entry Clerk; Dictionary of Occupational Titles, #203.582-054, Sedentary, (SVP-4).   The claimant has no work that qualifies as past relevant work after March 1, 2010."   Tr. 465.

12.   "On March 1, 2006, the claimant was 50 years old, an individual closely approaching advanced age (20 CFR 404.1563 and 416.963). The claimant is currently 57 years old, an individual of advanced age."   Tr. 466.

13.   "The claimant has at least a high school education and is able to communicate in English."   *Id.*

14.   "Transferability of job skills was not material to the determination of disability prior to March 1, 2010, because using the Medical-Vocational Rules as a framework supports a finding of 'not disabled,' whether or not the claimant had transferable job skills."   *Id.*   "After March 1, 2010, the claimant has no past relevant work."   *Id.*   The ALJ further stated: "Because the claimant has no PRW and is limited as above, she became disabled under the Medical-Vocational Guideline 202.04 as of the date of attainment of her 55th birthday, which was November 25, 2010, according to SSA rules for age determination."   *Id.*

15.   "Beginning on March 1, 2006, considering the claimant's age, education, work experience, and [RFC] based on the current

impairments, the claimant was able to perform a significant number of jobs in the national economy."   *Id.*   The ALJ further stated that beginning on March 1, 2006, Plaintiff's ability to perform all or substantially all the requirements of a full range of light work had been impeded by additional limitations.   "To determine the extent of erosion of the unskilled light occupational base caused by these limitations, [the ALJ] asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and [RFC] since March 1, 2006."   *Id.* at 467.   The vocational expert identified three representative occupations such as Bench Assembler II, light exertion, unskilled with an SVP of two; Assembler Small Parts, light exertion and unskilled with an SVP of two; and Assembler of Nuts and Bolts, light exertion, unskilled with an SVP of two.[8]   Tr. 467, 983.

16.   "The claimant's disability ended on March 1, 2006, but the claimant has become disabled again since that date," *i.e.*, November 25, 2010.   *Id.*

---

[8]   "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."   20 C.F.R. § 404.1568(a).   A Specific Vocational Preparation (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month."   Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."   *Id.*   Unskilled work corresponds to an SVP of one and two.   Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).   Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.   SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).   In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."   20 C.F.R. § 404.1567(b).

The ALJ concluded his decision finding that Plaintiff's disability for DIB and SSI ended as of March 1, 2006, but that she became disabled again as of November 25, 2010.   Tr. 466, 468.

## IV.  Legal Analysis

**Substantial evidence supports the ALJ's determination that Plaintiff was not disabled after March 1, 2006, but became disabled again on November 25, 2010.**

The main issue before this Court is whether substantial evidence in the record as a whole supports the Commissioner's final decision that Plaintiff's disability ended on March 1, 2006, because as of that date she was capable of performing work that existed in significant numbers in the economy.

Plaintiff raises several issues for the Court's consideration.   ECF No. 34.   First, Plaintiff argues the ALJ improperly determined that she had engaged in substantial gainful activity based on her work activity during an internship and in the Volunteers in Service to America program.   *Id.* at 3-6, 8.   The ALJ determined whether Plaintiff was engaged in substantial gainful activity since April 1, 2005, through March 1, 2006.   Tr. 446.   The ALJ discussed Plaintiff's work activity in 1999, 2000, and early 2005, including her work as an intern for the Georgia General Assembly from

January 10, 2005, to March 31, 2005.   Tr. 446-47.   The ALJ explained his

consideration of this work and determined that Plaintiff had not engaged in

substantial gainful employment since April 1, 2005.   Tr. 446.

> However, as noted above herein, the claimant posted earnings in
> 2005 of $3,416.00 as a Medicare Qualified Government
> Employee (Exhibits B13D).   The claimant explained this work
> activity some two years later, in a form dated March 31, 2007
> (Exhibit B1OE).   *According to the claimant, she had an*
> *internship at the Georgia General Assembly from January 10,*
> *2005 to March 31, 2005.   The claimant reported that her duties*
> *included answering the phone (Exhibit B1OE, page 1).   Indeed,*
> *at the 2011 hearing on this matter, the claimant admitted to doing*
> *an internship with the Georgia General Assembly for three months*
> *during January 2005 through March 2005.   In addition to*
> *answering the telephone and taking messages, she indicated the*
> *Internship was part of a college class and that she received a*
> *weekly stipend of about $274.   She indicated she did not*
> *particularly enjoy the internship.   Of note, during her June 2007*
> *hearing,  the claimant indicated she found the Internship*
> *enjoyable and quite "interesting" (Exhibit B13E, line 399).   She*
> *also testified at that time that not only did her duties include*
> *answering the telephone, but she also ran errands and did*
> *"whatever" else was asked of her (Exhibit B13E).*
>
> She also admitted at that hearing to recruiting tutors for an after
> school program associated with AmeriCorps for several years.
> She stated this was something she did as a volunteer.
>
> If the Agency had this evidence in August 2005, when the claimant
> was first asked about her activity, it *could* have been determined
> that the claimant had engaged in substantial gainful activity in
> January 2005.   Such a finding would have resulted in a very
> different outcome for this case.   Recall, the claimant entered into
> an extended period of eligibility in October 1999, which under the

rules and regulations of this Agency, would have allowed the claimant to pass into and out of benefits eligibility during periods of earnings at less than substantial gainful activity for 36 months, until October 2002.

The rules and regulations of this Agency further state that if a claimant engages in substantial gainful activity after the 36 month period expires, the extended period of eligibility ends the second month after the month disability ceases due to substantial gainful activity. Benefits terminate the third month after the month disability ceased due to substantial gainful activity.

Here, in 2005, the non-blind substantial gainful activity amount was $830.00.   Thus, by her own description, the claimant engaged in substantial gainful activity after the 36-month period had expired. The claimant's extended period of eligibility should have ended in March 2005, and her benefit termination month (BTM) should have been April 2005.   The claimant should not have undergone a medical continuing disability review in August 2005, as she was no longer eligible for benefits based on her work activity.

Nonetheless, the Agency, for reason unknown, did not pursue termination of benefits based on the claimant's work activity. *The concepts of due process and fundamental fairness dictate that the Agency cannot now make this finding regarding benefits termination, as the claimant has not been given proper notice of the issues, and she has not been provided an opportunity for a hearing on this particular issue.   Therefore, I have continued with an analysis of whether medical improvement has occurred, incorporating and implementing the directives of the Appeals Council's most recent remand.*

Tr. 447 (emphasis added).

According to the ALJ, the Social Security Administration (SSA) *could*

have determined that she had engaged in substantial gainful employment

and was no longer disabled in January 2005.   *Id*.   The SSA did not terminate Plaintiff's benefits based on her work activity.   Rather, the ALJ decided that due process and fundamental fairness dictated that he could not find that she was no longer disabled because of her performance of substantial gainful activity and he proceeded to determine whether Plaintiff had experienced medical improvement.   Tr. 447.   (The ALJ expressly determined that "as of March 1, 2006, the date the claimant's disability ended, the claimant had engaged in to periods of substantial gainful activity.   *The claimant has not engaged in substantial gainful activity since April 1, 2005*."   Tr.   446 (emphasis added)).   Plaintiff's argument that the ALJ improperly considered her work activity as substantial gainful employment at Finding 3, Tr. 446, when he ultimately terminated her benefits effective March 1, 2006, is rejected.

Notwithstanding, the ALJ considered whether medical improvement occurred as of March 1, 2006, and he determined it did.   Tr. 449.   As part of this determination, the ALJ considered, among other relevant medical and other evidence, her internship with the Georgia General Assembly and her work as a volunteer as a recruiter/ coordinator for the Georgia VISTA Project.   Tr. 453.   The ALJ noted that at the same time Plaintiff

pursued custody of her young grandchildren, and took care of her elderly mother (Exhibits B2E, B8E, and B10E).   These activities are inconsistent with the claimant's allegations of being disabled due to 'excruciating' and 'extreme' pain as well as difficulty concentrating, preferring to be alone, and being unable to perform any tasks for herself, which she has alleged throughout the record.

Tr. 453.[9]   Plaintiff has not shown that the ALJ erred when he considered this information as part of the sequential evaluation process.

Further, Plaintiff generally contends "there are many records, documents and medical records unaccounted for in the case file."   ECF No. 34 at 8-9.   In particular, Plaintiff suggests that the record is missing MRI scan reports from 1998 through 2011 and referenced a 2006 MRI scan from Thomasville Orthopedics Association (TOC), which, according to Plaintiff, should have been given more weight according to a prior remand order.   *Id.* at 8-9.

During the hearing held on June 18, 2007, before ALJ Moore, Tr. 390, Plaintiff referred to a missing June 2006 MRI scan, Tr. 392-94, and the ALJ stated that Plaintiff could send the MRI to the ALJ, Tr. 433.   As

---

[9]   The ALJ made another reference to Plaintiff's report of "working full-time as a coordinator for Georgia VISTA Project as a volunteer recruit."   Tr. 453.   The ALJ, under Finding 9, again referenced Plaintiff's internship, among other facts, when he determined whether Plaintiff had mild limitations in daily living, social functioning, and concentration, or pace.   Tr. 457; *see* Tr. 460 (Finding 10).

noted in footnote 10, *infra*, a June 22, 2006, MRI of Plaintiff's cervical spine from TOC is in the record, Tr. 274, 720-21, and was considered by the ALJ, Tr. 453.

Plaintiff also mentioned during this hearing that she did not "see anything from Dr. Hayek [phonetic].   I didn't get – but I'm ready."   Tr. 394. Plaintiff was given an opportunity to go through the file and "[t]hat way [she could] find any records that might be missing.   *Id.*   The parties then went back on the record and Plaintiff indicated that the only missing record was the cervical spine MRI.   The record was held open for seven days for Plaintiff to submit the missing MRI.   *Id.*   The ALJ asked Plaintiff if the file was complete other than the missing MRI and Plaintiff stated: "[a]s far as I can see."   Tr. 395.

Further, ALJ Oetter stated in his decision: "I note that at the most recent hearing on this matter [Feb. 19, 2013], the claimant had indicated she had no objection to the exhibits in the record, indicating that she had been provided with a copy of her file prior to the hearing, in accordance with the Appeals Council directive."   Tr. 456, 976-77.

The record includes MRI scan reports spanning from January 30, 1998, Tr. 677, 708-10 (right shoulder, cervical, and lumbar (Archibald

Medical Center) through October 28, 2011, Tr. 772-73 (cervical spine (Phoebe Putney)).[10]   The ALJ considered several MRI scan reports, Tr. 451, 453, 459-60, 462, including one MRI scan report from June 22, 2006, Tr. 453.[11]   *See* Tr. 301, 725 (Jan. 22, 2007, Ex. B13F, page 2 and B25F); 274, 720-21 (June 22, 2006, Ex. B24F, pages 1-2); 724 (Apr. 4, 2003, Ex. B24F, page 5); 727-32 (May 20, 2009, Ex. B26F, pages 1-8); *see also supra* at n.10.

Plaintiff also suggests that the records from Samaritan Clinic "are not a complete report of Plaintiff's medical condition," yet she does not identify specific medical records that are actually missing from the record or medical records that the ALJ did not consider.   ECF No. 34 at 9.

---

[10]   *See also* Tr. 715-16 (Sept. 9, 2002 (right shoulder (TOC)); Tr. 724 (Apr. 4, 2003 (lumbar spine (TOC); Tr. 274, 720-21 (June 22, 2006 (cervical spine (TOC)); Tr. 301, 725 (Jan. 22, 2007 (left shoulder) (MSA Diagnostic Imaging)); Tr. 733 (Apr. 14, 2009 (lumbar spine (Phoebe Putney)); Tr. 727-32 (May 20, 2009 (left and right shoulder; lumbar spine, and cervical spine (Phoebe Putney); and Tr. 772-73 (Oct. 28, 2011 (cervical spine (Phoebe Putney)).

[11]   As part of his discussion regarding Plaintiff's medical improvement occurring as of March 1, 2006, the ALJ expressly considered a June 22, 2006, cervical MRI scan report: "In June 2006, the claimant underwent cervical spine imaging, which revealed degenerative disc disease and multilevel disc herniations as well as disc protrusions with nerve root compromise (Exhibit B24F, pages one and two).   Though the imaging is dated after her condition improved, it is a condition that clearly would have existed prior to March 2006."   Tr. 453.

The record is somewhat confusing regarding some exhibits, although easily reconciled.   The "List of Exhibits" is part of the administrative record before this Court, but does not include a reference to some medical records from Samaritan Clinic, which Plaintiff frequented from approximately May 2008 through October 2010.   ECF No. 17 at 9.   These medical records, however, are in the record at pages 642 through 686.   Similarly, medical records from Phoebe Putney Memorial Hospital are omitted from the "List of Exhibits," ECF No. 17 at 9-10, but appear in the record at pages 687 through 707.   It uncertain whether Plaintiff is referring to these records or some other records that are not included in the record but are unnamed.

Notwithstanding, the ALJ also properly consider Plaintiff's treatment history, including her noncompliance with recommended treatment.   *See, e.g.*, Tr. 450-52, 459-63, 465.   20 C.F.R. 404.1529(c)(3)(iv-v); Social Security Ruling's 96-8p and 96-7p.   Plaintiff argues that gaps in her medical treatment were due to her loss of medical insurance, ECF No. 34 at 9, but as discussed by the ALJ, the record shows that Plaintiff's treatment was routine and she was often noncompliant with her treatment even before she lost her medical insurance, Tr. 450-52, 459-63, 465.   *See, e.g.*, Tr. 168-69, 214, 216, 350, 667-68.   Plaintiff's routine and

conservative treatment provides additional evidence that she experienced medical improvement and her condition was not as limiting as she alleged from March 1, 2006, to November 25, 2010.   20 C.F.R. § 404.1529(c)(3)(iv-v); Social Security Rulings 96-8p and 96-7p; Packer v. Comm'r Soc. Sec. Admin., 542 F. App'x 890, 892 (11th Cir. 2013) (unpublished).

In addition, Plaintiff's treatment history and reports regarding the effectiveness of her medication when she took it as prescribed indicate her treatment controlled her alleged symptoms, which further undermined her allegations of disabling limitations.   *See, e.g.*, Tr. 174, 217, 227, 239, 243-45, 249, 268, 330-31, 336, 646, 654, 654, 885-86.[12]   ALJ did not unduly rely on Plaintiff's treatment history in assessing her claim.   *See*, Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003).   The ALJ properly considered Plaintiff's treatment history.

---

[12]   The ALJ noted that in December 2008 and continuing through January 2011, Plaintiff "received episodic treatment at Samaritan Clinic.   In addition to receiving routine treatment for diabetes and hypertension, she was treated for coronary artery disease, shoulder pain, depression, GERD, and constipation. . . . The treatment notes from Samaritan Clinic revealed she was not compliant with prescribed treatment, specifically, she did not take Cymbalta as prescribed, and she did not exercise." Tr. 461 (citations omitted).

In addition, the ALJ properly considered Plaintiff's activities in determining whether she had experienced medical improvement and in assessing her RFC after March 1, 2006.   Tr. 448-49, 450-51, 453-55, 457, 462-64.   Although not dispositive, a claimant's activities may show the claimant symptoms are not as limiting as alleged and the ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.   Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).   *But see* Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).   As noted by the ALJ, Plaintiff reported that she drove, read, crocheted, went shopping, socialized with others, managed her finances, took care of her personal needs, performed household chores, completed a college degree in 2006, attended graduate school, had custody of her two young grandchildren, and took care of her grandchildren and elderly mother, Tr. 448-50, 453-55, 457, 462-64.   *See, e.g.*, Tr. 108-13, 117-18, 124-31, 149-54, 208, 229, 270, 397-98, 415-22, 642, 941-44, 957-60.   Plaintiff's activities are not indicative of disabling limitations she alleged.   Plaintiff's ability to work for pay and as a volunteer

also indicates that her condition improved and was not disabling by March

1, 2006.   *See, e.g.*, Tr. 86, 92–93, 104, 158, 398-400, 448-49, 453-54,

457, 462-63, 553, 573-75, 582, 585-86, 593, 595, 599, 602, 645-46.   *See*

20 C.F.R. § 404.1571; *see also* <u>Douglas v. Comm'r of Soc. Sec.</u>, 486 F.

App'x 72, 75 (11th Cir. 2012) (unpublished); <u>Harris v. Barnhart</u>, 356 F.3d

926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note

[the claimant's] daily activities, including part-time work, cleaning house,

attending church, and dining out with her boyfriend, were inconsistent with

her claim of disabling pain." (citation omitted)).   Moreover, the ALJ did not

unduly rely on Plaintiff's activities in deciding her claim, nor did the ALJ find

Plaintiff's activities to be dispositive of her ability to work.   The ALJ

properly considered Plaintiff's activities with the other evidence.

　　Plaintiff did not meet her burden of proving that she was disabled

during the relevant period from March 1, 2006, to November 25, 2010.

*See* <u>Ellison</u>, 355 F.3d at 1276.   Substantial evidence supports the ALJ's

consideration of the relevant evidence and he properly performed his duty

as the trier of fact in weighing and resolving any conflicts in the evidence.[13]

---

[13]   The ALJ made numerous adverse credibility findings throughout his decision.
*See, e.g.*, Tr. 452-54, 460, 462, 465.   The Eleventh Circuit has stated that "credibility
determinations are the province of the ALJ."   <u>Moore</u>, 405 F.3d at 1212 ("The ALJ may
discount subjective complaints of pain if inconsistencies are apparent in the evidence as

*See* Phillips, 357 F.3d at 1240 n.8.   Substantial evidence supports the ALJ's finding that Plaintiff experienced medical improvement in his assessment of Plaintiff's RFC during the relevant period.   Plaintiff also did not prove that she had additional or disabling limitations and did not meet her burden of proving that she could not perform the jobs identified by the vocational expert.   Tr. 467, 982-84; Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001); Jones v. Apfel, 190 F. 3d 1224, 1228 (11th Cir. 1999). Substantial evidence supports the ALJ's findings and decision that Plaintiff was no longer disabled as of March 1, 2006, and that she did not become disabled again until November 25, 2010.

Finally, Plaintiff attached documents to her court memorandum, but she did not explain the purpose of the documents as they may relate to the issues raised before this Court.   ECF No. 34 at 13-28.   Some of these documents are in the record, *see, e.g.*, Tr. 44-46, 500-05, others are not. Evidence submitted to the court may be considered only to determine whether a remand is warranted under section six of 42 U.S.C. § 405 (g). *See* Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1267-68 (11th Cir. 2007); Caulder v. Bowen, 791 F.2d 872, 876 (11th Cir. 1986).   Some

---

a whole.").

of the documents Plaintiff submitted to the Court are not new because they are duplicative of evidence already in the record.   Plaintiff did not show that any of these documents are new documents and/or material to the ALJ's decision or to this Court's proper resolution of this case.   <u>Caulder</u>, 791 F.2d at 877.

## V.   Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.   Accordingly, pursuant to 42 U.S.C § 405(g), the decision of the Commissioner to terminate Plaintiff's applications for Social Security benefits effective March 1, 2006, and to find she was disabled again as of November 25, 2010, is **AFFIRMED** and the Clerk is **DIRECTED** to enter judgment for the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on December 28, 2015.

**s/   Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**